**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LONDON DIVISION**

| | | |
|---|---|---|
| **USA WASTE AND RECYCLING, INC.** <br><br> **and** <br><br> **AMERICAN LAND RESERVE, LLC** <br><br> **Plaintiffs**, <br><br> **vs.** <br><br> **PIKE COUNTY, KENTUCKY** <br><br> **and** <br><br> **PIKE COUNTY FISCAL COURT** <br><br> **Defendants**. | ) | Case No. 6:26-cv-00250-KKC |

---

**PLAINTIFF, USA WASTE AND RECYCLING, INC. AND PLAINTIFF, AMERICAN LAND RESERVE, LLC'S RESPONSE IN OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANT, PIKE COUNTY, KENTUCKY AND DEFENDANT, PIKE COUNTY FISCAL COURT**

---

Come Plaintiff, USA Waste and Recycling, Inc. ("USA") and Plaintiff, American Land Reserve, LLC ("American Land Reserve"; collectively, "Plaintiffs"), by counsel, and make their Response in Opposition to the Motion to Dismiss (Doc #5) of Defendant, Pike County, Kentucky

("Pike County") and Defendant, Pike County Fiscal Court (the "Pike County Fiscal Court"; collectively, the "Pike County Defendants").

## I. INTRODUCTION

This litigation arises from the Pike County Fiscal Court's decision to publicly solicit bids "to construct and operate a privately owned solid waste landfill that [would] accept Pike County municipal solid waste at favorable term financial considerations to the County." *See* "Request for Proposal for Host Community Agreement" (the "RFP"; attached[1] as **Exhibit 1**). USA answered that call by submitting a bid ("USA's Bid"; attached as **Exhibit 2**) which offered to "accept for disposal all municipal solid waste delivered to the landfill by and on behalf of the County … at *no cost* to … the County." *See* USA's Bid at p. 2 (emphasis in original). The Pike County Fiscal Court unanimously accepted USA's Bid, and awarded USA a solid waste franchise (the "Solid Waste Franchise") on October 21, 2025. "Reasonably relying upon the Pike County Fiscal Court's award of the [Solid Waste] Franchise," USA and American Land Reserve "incurred costs and expenses which exceeded $2,100,000." *See* Plaintiff's Complaint and Jury Demand (Doc #1; the "Complaint") at ¶ 19.

Under the terms of the subsequently negotiated host community agreement which contained the specific terms and conditions governing the Solid Waste Franchise (the "Host Community Agreement"; attached hereto as **Exhibit 3**), USA's affiliate, American Land Reserve[2], delivered upon USA's promise by agreeing to provide Pike County with free solid waste disposal

---

[1] All of the exhibits attached hereto were also attached as exhibits to Plaintiff's Complaint and Jury Demand (Doc #1). Thus, the Court need not transform the Pike County Defendants' Motion to Dismiss into a motion for summary judgment pursuant to Fed R. Civ. P. 12(c), because "documents attached to the pleadings are considered a part of the pleadings and may therefore be 'considered without converting a motion to dismiss into one for summary judgment.'" *Clark v. Stone*, 998 F.3d 287, 296 (6th Cir. 2021), quoting *Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

[2] American Land Reserve executed the Host Community Agreement in its capacity as USA's assignee, with the Pike County Fiscal Court's consent). *See* Plaintiff's Complaint and Jury Demand (Doc #1) at ¶ 32.

for the entire 20-year term of the Solid Waste Franchise, a benefit ***which the parties agreed was worth $4,160,000 per year in 2026 dollars***. *See* Host Community Agreement at § 4.02. However, within weeks after the Host Community Agreement became binding, a divided Pike County Fiscal Court voted to "rescind" the Host Community Agreement, and thereby refused to perform its obligations thereunder; some of which were extremely time-sensitive, and almost all of which were essential to Plaintiffs' ability to construct and operate the new private landfill (the "New Landfill"). In so doing, the Pike County Fiscal Court illegally revoked the Solid Waste Franchise, and rendered it virtually worthless.

Under Kentucky law, a franchise is generally defined "as a right or privilege granted by a sovereign power, government or a governmental entity to a party to do some act which such party could not do without a grant from the government." *E.M. Bailey Distributing Co., Inc. v. Conagra, Inc.*, 676 S.W.2d 770, 771 (Ky. 1984). Within the context of Kentucky's statutory framework governing local solid waste management, "'Franchise' means a franchise, contract, right, authorization, or privilege granted by a local government for provision of solid waste management services." KRS 109.012(5).

Because "[t]he management of solid waste, including its disposal, is vested exclusively in county fiscal courts" pursuant to KRS 67.083(3)(o), a private party that obtains "the right to operate a landfill" by contracting with a county fiscal court obtains a franchise; the validity of which depends upon "strict adherence to the constitutional mandates of Section 164" of the Kentucky Constitution. *Eastern Kentucky Resources v. Arnett*, 934 S.W.2d 270, 273–75 (Ky. 1996). § 164 of the Kentucky Constitution provides, in relevant part, that:

> No county, city, town, taxing district or other municipality shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years. Before granting such franchise or privilege for a term of years, such municipality shall first, after due advertisement,

> receive bids therefor publicly, and award the same to the highest and best bidder; but it shall have the right to reject any or all bids …

A franchise duly granted in compliance with § 164 of the Kentucky Constitution is "in the nature of a vested right of property" (*Christian-Todd Telephone Co. v. Commonwealth*, 161 S.W. 543, 545 (Ky. 1913)) which the granting governmental authority may not revoke. In *E.M. Bailey*, *supra*, the Kentucky Supreme Court characterized a franchise as "a fixed right for a definite term" and contrasted a franchise with a government–issued license as follows:

> "[I]t is useful to distinguish a franchise from a license. A license in respect to real property can be defined as a personal privilege to do acts upon the land of the licensor of a temporary nature which are revocable at the will of the licensor. ***A franchise is neither temporary or personal and it is not revocable at the will of the grantor***."
>
> *E.M. Bailey*, 676 S.W.2d at 772, citing 36 Am.Jur.2d § 2, Franchises; *cf. City of Owensboro v. Cumberland Tel. & Tel. Co.*, 230 U.S. 58 (1913) (emphasis added).

In *City of Owensboro v. Cumberland Tel. & Tel. Co.*, 230 U.S. 58 (1913), the United States Supreme Court affirmed the trial court's decision enjoining the City of Owensboro from revoking a telephone franchise, holding "that [the revoking ordinance] was an impairment of the ***company's contractual property rights*** in the streets, and, as such, in contravention of the ***contract and due-process clauses*** of the Constitution of the United States." *City of Owensboro*, 230 U.S. at 61 (emphases added). Moreover, the United States Supreme Court held in *W. River Bridge Co. v. Dix*, 47 U.S. (6 How.) 507 (1848) that "[a] franchise is property," and that "[i]t is its character of property only which imparts to it value, and alone ***authorizes in individuals a right of action for invasions or disturbances of its enjoyment***." *Dix*, 47 U.S. (6 How.) at 534 (emphasis added). The United States Supreme Court has further held that a franchise "is a vested right" which "[t]he state … may retake … ***as it may take other private property***, for public uses, ***upon the payment of just compensation***" *Monongahela Nav. Co. v. U. S.*, 148 U.S. 312, 341 (1893) (emphases added).

Under Kentucky law, when the Pike County Fiscal Court voted unanimously to accept USA's Bid in response to the RFP (which the Pike County Fiscal Court had publicly advertised), the Pike County Fiscal Court "perfect[ed] the validity of the [Solid Waste Franchise]." *Thomas v. City of Horse Cave*, 61 S.W.2d 601, 603 (Ky. 1933). Even though the Solid Waste Franchise remained subject to the parties' negotiation of the Host Community Agreement, that fact merely delayed the date upon which the Solid Waste Franchise became irrevocable until the Host Community Agreement became binding on February 10, 2026.

Moreover, none of the conditions set forth in the Host Community Agreement provided for American Land Reserve's forfeiture of the Solid Waste Franchise, and the respective holdings of the Kentucky Supreme Court and the Kentucky Court of Appeals in *Arnett*, *supra*, and *BFI Waste Systems of North America, Inc. v. Huntington Woods Neighborhood Ass'n, Inc.*, 134 S.W.3d 624 (Ky. App. 2003) establish that Kentucky's permitting scheme for solid waste landfills had no impact whatsoever upon the validity and irrevocability of the Solid Waste Franchise.

By repudiating the Host Community Agreement and refusing to perform its obligations thereunder which were essential to Plaintiffs' use and enjoyment of the Solid Waste Franchise, the Pike County Defendants "denied [Plaintiffs] all economically beneficial or productive use of" the Solid Waste Franchise and thus effected a total regulatory taking of the Solid Waste Franchise. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992); *See also* Complaint at ¶ 38. Because Plaintiffs were contractually entitled to the Pike County Fiscal Court's performance of those obligations, the Pike County Defendants' actions and omissions also deprived Plaintiffs of their procedural and substantive due process rights. Plaintiffs' claims herein pursuant to 42 U.S.C. § 1983 are permissible and appropriate because they arise from a "decision officially

adopted and promulgated" by the Pike County Fiscal Court. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978).

The Pike County Defendants' actions "purporting to cancel the [Solid Waste Franchise]" also violated Art. 1, § 10 of the United States Constitution and § 19 of the Kentucky Constitution. *City of Bowling Green v. Davis*, 230 S.W.2d 909, 910 (Ky. 1950) ("*Davis I*").

For these reasons and the reasons set forth below, the Pike County Defendants' Motion to Dismiss must be denied.

## II. PERTINENT FACTS

On October 7, 2025, the Pike County Fiscal Court unanimously approved Pike County Fiscal Court Order Number 10.07.25.010, which authorized "the issuance of [a Request for Proposal] to solicit proposals for a Solid Waste disposal site to be privately constructed in Pike County." *See* Complaint at ¶ 13 and Pike County Fiscal Court Order Number 10.07.25.010 (attached as **Exhibit 4**). Consequently, the RFP ran as an advertisement in the October 14–16, 2025 edition of the Appalachian News-Express. The RFP sought bids

> "[F]rom qualified individuals and organizations to construct and operate a privately owned solid waste landfill that will accept Pike County municipal solid waste at favorable term financial considerations to the County pursuant to the terms of ***any subsequent host community agreement*** as best meets the scope and terms provided herein below."

*See* Complaint at ¶ 14, quoting the RFP (emphasis added).

On October 21, 2025, USA submitted USA's Bid, which "responded to the [RFP]" and "reflected the terms and complied with the instructions set forth" therein. *See* Complaint at ¶ 15. USA's Bid "proposed and envisioned" that Pike County and "NewCo" (an affiliate of USA yet to be formed, which ultimately became American Land Reserve) would enter into a host community agreement for a term of "'20 years, or the maximum term allowed under then existing KY law,'" which would govern NewCo / American Land Reserve's "'construction and operation of [the New

Landfill] as permitted by the Commonwealth of Kentucky.'" *See* Complaint at ¶¶ 15, 16, quoting USA's Bid at pp. 1–2.

"On October 21, 2025, the Pike County Fiscal Court voted unanimously (i) to accept USA's Bid, and (ii) to authorize Pike County Judge/Executive Ray S. Jones, II ('Judge Jones') 'to enter into the negotiation of a proposed Host [Community] Agreement with [USA] and the McBrayer Law Firm.'" *See* Complaint at ¶ 17 (brackets in original) and Pike County Fiscal Court Order Number 10.21.25.013 (attached as **Exhibit 5**). The parties negotiated the Host Community Agreement over the ensuing three months, which the Pike County Fiscal Court unanimously approved (and Judge Jones executed) on January 29, 2026, and which American Land Reserve executed twelve days later (as USA's assignee, with the consent of the Pike County Fiscal Court). *See* Complaint at ¶¶ 20 and 32 and Pike County Fiscal Court Order Number 01.29.26.007 (attached as **Exhibit 6**).

Through the Host Community Agreement, the Pike County Fiscal Court promised and agreed to (i) amend the Pike County Solid Waste Management Plan (the "PCSWMP") "by April 1, 2026 to authorize and enable the construction and operation of the New Landfill"; (ii) refrain from changing the PCSWMP "'to in any way limit, restrict, or impair the operations of the [New Landfill], the methodology of transport of materials to the [New Landfill] site, or the types, origins, or nature of material that is received, accepted and disposed at the [New Landfill]'"; (iii) "'cooperate [with American Land Reserve] in good faith and use commercially reasonable efforts to obtain' the permitting and other regulatory approvals" necessary "to develop, construct, and operate the New Landfill"; and (iv) "'cooperate [with American Land Reserve] in good faith and use commercially reasonable efforts to facilitate [American Land Reserve's] negotiations with rail

carriers.'" *See* Complaint at ¶ 22, citing and quoting the Host Community Agreement at §§ 3.02(d), 6.02, 3.01(b)(v), 1.01(qq), and 3.01(c)(iv).

Then, "[o]n February 24, 2026, the Pike County Fiscal Court voted 3–1 to 'rescind' the Host Community Agreement." *See* Complaint at ¶ 23 and Excerpt from the Minutes of the Pike County Fiscal Court Special Meeting on February 24, 2026, referring to Pike County Fiscal Court Order Number 02.24.26.003 (attached as **Exhibit 7**). The Pike County Fiscal Court reprised that same vote on March 3, 2026. *See* Complaint at ¶ 24 and Pike County Fiscal Court Order Number 03.03.26.005 (attached as **Exhibit 8**). "The Pike County Fiscal Court did not provide USA or American Land Reserve any opportunity to appear or speak before the Pike County Fiscal Court before voting to 'rescind' the Host Community Agreement on either February 24, 2026 or March 3, 2026." *See* Complaint at ¶ 25.

## III. LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(h)(3)

Although the Pike County Defendants' Motion to Dismiss seeks the dismissal of the Complaint under both Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(h)(3), "[a] motion to dismiss brought under Rule 12(h)(3) is analyzed in the same manner as a motion to dismiss brought under Rule 12(b)(1)," and "[t]he distinction between a Rule 12(h)(3) motion and a Rule 12(b)(1) motion is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party." Cohan v. MGM Hosp., Inc., 20-CV-10981, 2021 WL 4478744, at *1 (E.D. Mich. Sept. 30, 2021), citing *Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 879 n.3 (3d Cir. 1992).

"Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). While "[f]acial attacks challenge plaintiffs' establishment of

jurisdiction in their complaint[,] [f]actual attacks contest the existence of factual prerequisites to jurisdiction." *Mooneyham v. Equifax Info. Servs., LLC*, 99 F. Supp. 3d 720, 722 (W.D. Ky. 2015). In evaluating a facial attack to subject matter jurisdiction, the Court must treat a plaintiff's allegations as true, while a factual attack requires the Court to "weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

The Pike County Defendants' Motion to Dismiss asserts that the Court must "dismiss the Kentucky-law damages claims against [the Pike County Defendants] on sovereign immunity grounds" because "[t]he Complaint ***identifies*** no legislative waiver applicable to [the Pike County Defendants] and the state law claims set forth in the Complaint." *See* Pike County Defendants' Motion to Dismiss at p. 5 (emphasis added). Accordingly, as the Pike County Defendants' Motion to Dismiss "challenge [Plaintiffs'] establishment of jurisdiction in their complaint," the Pike County Defendants' Motion to Dismiss constitutes a facial attack on this Court's subject matter jurisdiction, and the Court must treat the allegations of the Complaint as true in resolving that issue.

Moreover, to the extent that the Pike County Defendants' Motion to Dismiss seeks dismissal of Plaintiffs' claims brought pursuant to 42 U.S.C. § 1983 based on the alleged absence of subject matter jurisdiction, the Court "should *find that jurisdiction exists* and deal with the objection as a direct attack on the merits of [Plaintiffs'] claim," because the Pike County Defendants' Motion to Dismiss "implicates an element of [Plaintiffs'] causes of action" based on substantive due process, procedural due process, and taking without just compensation.[3] *Gentek Bldg. Prods.*, 491 F.3d at 330 (emphasis in original).

---

[3] The Pike County Defendants' Motion to Dismiss asserts that the Complaint fails to "establish a vested entitlement" sufficient to maintain claims for the deprivation of substantive and procedural due process or the "property interest"

**B. Fed. R. Civ. P. 12(c)**

A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is evaluated "under the same … standard [that] appl[ies] to 12(b)(6) motions for dismissal," which requires the Court to determine whether the Complaint "contain[s] sufficient facts to 'state a claim to relief that is plausible on its face.'" *Clark v. Stone*, 998 F.3d 287, 297–98 (6th Cir. 2021), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This evaluation requires the Court to "'construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law.'" *Clark*, 998 F.3d at 298, quoting *Commer. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

## IV. ARGUMENT

**A. Sovereign immunity does not apply to any claim set forth in the Complaint**

In addressing claims of sovereign immunity, "[a] court must first ask whether a state actor is even eligible for the sovereign immunity that the legislature may waive." *New Alb. Main St. Props. v. Watco Cos., LLC*, 75 F.4th 615, 624 (6th Cir. 2023). For the reasons set forth herein, the Pike County Defendants are not eligible for sovereign immunity with respect to ***any*** of the claims set forth in the Complaint. Moreover, any claim of "governmental immunity" is inapposite herein, as "[g]overnmental immunity … is a derivative of sovereign immunity and is granted to qualified governmental agencies or entities." *Parking Auth. of River City, Inc. v. Bridgefield Cas. Ins. Co.*, 477 S.W.3d 598, 600 (Ky. App. 2015).

---

necessary to bring a claim for a taking without just compensation. *See* Pike County Defendants' Motion to Dismiss at p. 6). Because a "protected entitlement" is an element of a claim for deprivation of due process under 42 U.S.C. § 1983 (*See Rubicon Real Est. Holdings, LLC v. City of Pontiac*, 179 F.4th 431, 444 (6th Cir. 2026) and "[a] takings claim necessarily requires proof of a cognizable property interest as well as a government taking of that interest without just compensation" (*See Id.* at 447), the Court should consider these claims in the Pike County Defendants' Motion to Dismiss on their merits.

**1. Eleventh Amendment Immunity (Count I, Count III, and Count IV)**

Although the Pike County Defendants' Motion to Dismiss does not raise the issue of whether the Eleventh Amendment bars Plaintiffs' federal causes of action as set forth in the Complaint, Plaintiffs address that issue herein for the sake of completeness, and due to the fact that the Court may wish to raise and address this issue *sua sponte*. *See Nair v. Oakland County Community Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006).

Notwithstanding the immunity that Kentucky counties enjoy with respect to claims under Kentucky law, "a county is not an arm of the state for immunity purposes," and does not have sovereign immunity protection in connection with claims brought under 42 U.S.C. § 1983. *Jyrome of the Family Paige v. Child Support Program*, 1:20-CV-00034-GNS, 2020 WL 1816057, at *5, n.7 (W.D. Ky. Apr. 9, 2020), citing *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 401 (1979) (citations omitted from original). *See also Jefferson Cty. Fiscal Court v. Peerce*, 132 S.W.3d 824, 836–37 (Ky. 2004) (holding that sovereign immunity did not apply to a county fiscal court with respect to 42 U.S.C. § 1983 claims brought against it in a Kentucky state court).

Moreover, because the United States Supreme Court held generally in *N. Ins. Co. v. Chatham Cty.*, 547 U.S. 189, 193 (2006) that "only States and arms of the State possess immunity ***from suits authorized by federal law***," and that "this Court has repeatedly refused to extend sovereign immunity to counties," sovereign immunity also does not apply to the Pike County Defendants with respect to Count IV of the Complaint (seeking declaratory judgment pursuant to 28 U.S.C. § 2201).

**2. Inverse Condemnation (Count II)**

"[S]uits which involved the taking of property for public use, or trespass amounting to a taking, have been sustained upon the idea that the state had surrendered its immunity or authorized

the suit by express constitutional or statutory provisions." *Ky. State Park Com. v. Wilder*, 84 S.W.2d 38, 39 (Ky. 1935). Moreover, while "[t]he exemption of a county from suit unless the authority can be discovered in the statutes or found to exist by necessary implication from some express power given or the action is upon a contract which it could make is a well-established doctrine … Immunity has been consistently denied where the county was sued for the value of land taken for roads and damages incident to trespass" because "the county could have acquired the property taken (actually or constructively) in a legal manner under its right of eminent domain," and "the exercise of that power must always be in subordination to the constitutional right of a citizen to be first paid the value of his property taken or damages, if the county proceeds to deprive him of his property in disregard of the law and not according to legal processes." *Wilder*, 84 S.W.2d at 40.

Accordingly, sovereign immunity is inapplicable to the Pike County Defendants in connection with Count II of the Complaint, which involves a claim for inverse condemnation pursuant to §§ 13 and 242 of the Kentucky Constitution.

**3. Breach of Host Community Agreement (Count V) and Breach of Implied Duty of Good Faith and Fair Dealing (Count VI)**

In *King-Crete Drilling, Inc. v. Whitley Cnty. Fiscal Court*, 2024-SC-0232-DG, 2026 WL 2511083 (Ky. Aug. 20, 2026) (not final), the Kentucky Supreme Court held that while "[s]overeign immunity generally extends to county governments as basic subdivisions of the Commonwealth," an "express written contract" is subject to "a narrow, longstanding exception to total immunity for counties" which "does allow recovery under the terms of any express written contract." *Id.* at *2, 8, citing *Illinois Cent. Gulf R. Co. v. Graves Cnty. Fiscal Court*, 676 S.W.2d 470 (Ky. App. 1984).[4]

[4] The Kentucky Supreme Court held in *King-Crete* that "*Illinois Central* has been controlling law for more than forty years." *King-Crete*, 2026 WL 2511083, at *5.

Accordingly, as the Host Community Agreement is an "express written contract," Plaintiffs' suit based on the Pike County Defendants' breach of the Host Community Agreement as set forth in Count V of the Complaint is not subject to any defense based on sovereign immunity.

Moreover, because "[w]ithin every contract, there is an implied covenant of good faith and fair dealing, and contracts impose on the parties thereto a duty to do everything necessary to carry them out," the implied covenant of good faith and fair dealing effectively constitutes a term of the Host Community Agreement. *Farmers Bank & Tr. Co. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005). Thus, Count VI of the Complaint also seeks "recovery under the terms of any express written contract," and is not barred by sovereign immunity.

### B. The Complaint states plausible claims under federal law based upon Plaintiffs' vested and irrevocable property rights in the Solid Waste Franchise

#### 1. The validity of the Solid Waste Franchise was perfected on October 21, 2025

§ 164 of the Kentucky Constitution is "self-operative and confer[s] upon the counties and municipalities authority to grant franchises pertaining to subjects of which they were given jurisdiction." *Irvine Toll Bridge Co. v. Estill Cty.*, 275 S.W. 634, 636 (Ky. 1925). As such, "the method pointed out in [§ 164 is] the only one to be followed" (*Id.* at 637), although multiple holdings of Kentucky's highest court have turned upon additional statutory procedural requirements which applied specifically to cities. *See*, *e.g.*, *Cumberland Telephone & Telegraph Co. v. City of Hickman*, 111 S.W. 311, 313 (Ky. 1908); *E. Ky. Home Tel. Co. v. Hatcher*, 179 S.W. 7, 9 (Ky. 1915); *Hodgenville v. Gainesboro Tel. Co.*, 35 S.W.2d 888, 890 (Ky. 1931).

To fully comply with § 164 of the Kentucky Constitution, a county fiscal court must:

(i) Pass a measure that "defin[es] the franchise which the [county] intend[s] to grant [and] direct[s] the proposed franchise to be advertised for public competitive sale." *Thomas*, 61 S.W.2d at 603.

(ii) Conduct a "public competitive sale" of the franchise after "due advertisement." *Thomas*, 61 S.W.2d at 602–03.

(iii) "[R]eceive bids [for the franchise] publicly," determine the "highest and best bidder," and take action "approving [the sale of the franchise] and entering into a contract" with the successful bidder. *Hatcher v. Kentucky & West Virginia Power Co.*, 133 S.W.2d 910, 912 (Ky. 1939).

To award a valid ***solid waste*** franchise, a county fiscal court must additionally comply with the procedural requirements of KRS 67.083(3)(o), which allows fiscal courts to choose among:

(i) The creation of a solid waste franchise solely through an ordinance (in which case all the terms and conditions of the franchise contract would appear in the body of the ordinance; *See Hamilton v. Bastin Bros.*, 224 S.W. 430, 431 (Ky. 1920));

(ii) The creation of a solid waste franchise through the fiscal court's entry into a contract (whereby the fiscal court would formally create the franchise by accepting the bid of the "highest and best bidder" through an order or resolution, and then enter into a separate and independent contract that contains the terms and conditions governing the franchise); or

(iii) The creation of a solid waste franchise using the same procedures as (ii) above while substituting an ordinance for an order or resolution.

Under the three-step process mandated by § 164 of the Kentucky Constitution, the county fiscal court's ***first*** action, which "define[s] and create[s]" the franchise also "grant[s]" the franchise because the county's decision to offer a franchise for sale constitutes "'a proposition to any bidder that the [ordinance, resolution, or order, as applicable] should be binding if a satisfactory bid should be made for it and accepted.'" *Union Light, Heat & Power Co. v. City of Covington*, 55 S.W.2d 667, 669 (Ky. 1932). ***The franchise "take[s] effect" when "the bid of the successful bidder [is] accepted" by the fiscal court***, even when "no corresponding burden is laid on the [recipient] contractor" until a future date in order to "give him a sufficient time to get ready to [perform under his franchise]." *Truesdale v. City of Newport*, 90 S.W. 589, 590 (Ky. 1906),

*overruled on other grounds by City of Florence v. Owen Elec. Co-op., Inc.*, 832 S.W.2d 876 (Ky. 1992) (emphasis added).

Taken as true, the facts as pleaded in the Complaint show that the Pike County Fiscal Court complied with § 164 of the Kentucky Constitution and KRS 67.083(3)(o) by (i) issuing an RFP on October 7, 2025, which defined and created the Solid Waste Franchise in Pike County Fiscal Court Order Number 10.07.25.010; (ii) duly advertising the RFP in the October 14–16, 2025 edition of the Appalachian News-Express; and (iii) accepting USA's bid and awarding the Solid Waste Franchise on October 21, 2025 in Pike County Fiscal Court Order Number 10.21.25.013; such that the Solid Waste Franchise became effective that same date under the holding of *Truesdale*, *supra*.

**2. Even though the Solid Waste Franchise remained subject to the parties' negotiation of the Host Community Agreement, that fact, at the most, merely delayed the date upon which the Solid Waste Franchise became irrevocable until the Host Community Agreement became binding on February 10, 2026, and *did not* prevent the perfection of a valid franchise on October 21, 2025**

§ 164 of the Kentucky Constitution does not dictate any "restriction as to the terms [of a franchise] except duration of time" (*i.e.*, "[n]o … municipality shall be authorized or permitted to grant any franchise or privilege … for a term exceeding twenty years"). *Russell v. Kentucky Utilities Co.*, 22 S.W.2d 289, 290 (Ky. 1929), quoting § 164 of the Kentucky Constitution. Moreover, a franchise-granting municipality's acceptance of a successful bid does not preclude it from making that acceptance "subject to the performance of conditions and duties on the part of the grantee" (*Christian-Todd Telephone Co.*, 161 S.W. at 545), which the municipality "may annex … to the exercise of the franchise." *Moberly v. Richmond Telephone Co.*, 103 S.W. 714, 714 (Ky. 1907).

While a franchise "partakes … of the nature of a contract" (*City of Hickman*, 111 S.W. at 314), Kentucky's highest court has found that ***a validly perfected franchise arose*** even where the granting municipality's "acceptance" imposed a ***condition precedent*** that effectively constituted a

counter-offer which delayed the binding of any contract until the successful bidder satisfied the condition precedent. In *City of Princeton v. Princeton Electric Light & Power Co.*, 179 S.W. 1074 (Ky. 1915), the Princeton city council inserted a provision into its ordinance awarding the franchise at issue which "required [the successful bidder] to ***accept*** [the council's] terms and conditions by writing an acceptance upon the record of the city council, and execute bond for the performance of the conditions and obligations undertaken by" the putative franchise grantee. *City of Princeton*, 179 S.W. at 1077 (emphasis added).

The city council's "accepting" ordinance did not set a deadline "for the acceptance or execution of the bond," but Kentucky's highest court held that these actions "should have been done within a reasonable time ***to make the franchise irrevocable*** by the council of the city." *Id.* (emphasis added). While the Court's holding ultimately did not turn on this issue, the Court's statement that the putative grantee should have satisfied these requirements "to make the franchise irrevocable" strongly suggests that the Court would have upheld the validity of the city council's subsequent revocation, which occurred before the putative grantee satisfied the condition precedent. *City of Princeton*, 179 S.W. at 1077. Most notably, the Court ***did not*** hold that the condition precedent prevented a validly perfected franchise from coming into existence, even though the "accepting" ordinance had delayed the binding of the actual franchise contract, pending the satisfaction of the city council's condition precedent.

Kentucky's highest court has also found that a granting government authority's acceptance of a franchise applicant's bid perfects a valid and irrevocable franchise, even when the ordinance, resolution, or order accepting that bid ***leaves essential terms subject to further negotiation***. In *Davis I*, *supra*, Kentucky's highest court held that the City of Bowling Green did not have the authority to revoke the grantee's garbage collection franchise, even though the ordinance did not

contain any term regarding the rates of the grantee's service. *Davis I*, 230 S.W.2d at 910, 912. The Court came to similar conclusions in *City of Covington*, 55 S.W.2d at 669–70 (holding that [a]n "'ordinance granting a franchise'" ***need not include all of the essential contractual terms*** which ultimately govern the franchise contract, such as "the rates to be charged" in connection with a telephone franchise; emphasis added)[5] and in *Russell*, 22 S.W.2d at 290 (holding that a municipality's franchise grant may ***expressly contemplate*** the negotiation of an additional agreement between the fiscal court and the private entity which fills in the "method or manner by which the purpose and object of the franchise may be accomplished").

Finally, Kentucky's highest court has recognized the validity of a franchise involving an "***independent contract***, made subsequent to the granting of the franchise [which] was no part of the process by which the franchise was created, and [which] could not [have] alter[ed] the terms of the ordinance creating and granting [the franchise]." *Bastin Bros.*, 224 S.W. at 432, citing *S. R. Schaff & Co. v. City of La Grange*, 195 S. W. 1097 (Ky. 1917) (emphasis added). Accordingly, even though Pike County Fiscal Court Order Number 10.21.25.013 expressly contemplated the future negotiation and execution of an ***entirely separate contract*** containing virtually all of the material terms governing the Solid Waste Franchise, Pike County Fiscal Court Order Number 10.21.25.013 still awarded USA a validly perfected franchise (*i.e.*, the Solid Waste Franchise) on October 21, 2025.

---

[5] A county fiscal court or other municipality does not have unfettered discretion to demand any terms and conditions it wishes, as a city or county may "impose such reasonable regulations as to [the] exercise [of a franchise] as will effectuate the purposes for which it is granted" (*Christian-Todd Telephone*, 161 S.W. at 545), and "such original or initiatory provisions that might be prescribed by [a city or county] in its franchise ordinance should be reasonable … and should not be impossible of performance, nor so burdensome as to destroy the possibility of the operator of the plant to earn a reasonable profit." *Peoples Gas Co. of Kentucky v. City of Barbourville*, 165 S.W.2d 567, 571 (Ky. 1942).

Moreover, regardless of whether one construes the yet-to-be-negotiated Host Community Agreement (and the specific reference thereto in Pike County Fiscal Court Order Number 10.21.25.013) as a condition precedent that prevented the Solid Waste Franchise from becoming irrevocable until both parties had executed the Host Community Agreement on February 10, 2026, the facts as pleaded in the Complaint, taken as true, establish that the Solid Waste Franchise became ***irrevocable*** before the Pike County Fiscal Court first attempted to rescind the Host Community Agreement on February 24, 2026.

**3. None of the provisions set forth in the Host Community Agreement which are defined therein as "conditions precedent" have any application or relevance to the continued validity of the Solid Waste Franchise.**

Although the Host Community Agreement contains provisions which are designated as "conditions precedent" (*See* Host Community Agreement at § 1.01(k)), such conditions apply ***only*** to the future obligations of the parties which become "effective as of the Commencement Date" of the Host Community Agreement. *See* Host Community Agreement at § 3.02. In fact, three of these four "conditions precedent" (Host Community Agreement §§ 3.02(b), (c), and (d)) depend, at least in part upon the Pike County Fiscal Court's performance of an express duty, and no "condition precedent" makes any reference whatsoever to the Solid Waste Franchise or its continued validity and effectiveness. "To be considered enforceable" under Kentucky law, "a condition precedent must be clear and it must be shown that the parties have no agreement in the absence of the condition precedent." *Judd v. Bank of Marshall Cnty.*, 2005-CA-001862-MR, 2007 WL 1192714, at *2 (Ky. App. Apr. 6, 2007) (unpublished), citing *Horn v. Ranier*, 560 S.W.2d 233 (Ky. App. 1977). Thus, under the facts herein, any condition precedent which applied to the Solid Waste Franchise was required to unambiguously state that the performance of that condition precedent was necessary for the Solid Waste Franchise to become binding and irrevocable.

Moreover, although a franchise contract may contain ***conditions subsequent*** which can cause the forfeiture of a vested franchise upon the franchise grantee's non-performance thereof, none of the conditions set forth in § 3.02 of the Host Community Agreement qualify as such, as no condition gives the Pike County Fiscal Court the authority to forfeit the Solid Waste Franchise upon the failure of that condition. *See* Host Community Agreement §§ 3.02(a)–(d). *Cf. Davis v. City of Bowling Green*, 289 S.W.2d 506 (Ky. 1955) ("*Davis II*") (where the Court held that the same franchise grantee who had successfully obtained injunctive relief in *Davis I* based on the irrevocability of his franchise had forfeited that franchise due to his failure to satisfy a condition subsequent that appeared in a "provision of the franchise ordinance which set forth the obligation of the franchise holder to 'commence and complete' the system of garbage collection within a period of six months." *Davis II*, 289 S.W.2d at 508).

**4. The Commonwealth of Kentucky's permitting scheme for solid waste landfills has no impact on the validity of the Solid Waste Franchise**

In *Arnett*, *supra*, the Kentucky Supreme Court held that a private company's contract with the Magoffin County Fiscal Court "for the disposal of solid waste in a privately-owned landfill" constituted "***a grant of a privilege or franchise***," even while recognizing that the private entity "could not construct or operate a landfill for the disposal of solid waste in Magoffin County without the express permission of the Cabinet of Natural Resources and Environmental Protection." *Arnett*, 934 S.W.2d at 273 (emphasis added). Citing *Arnett*, the Kentucky Court of Appeals in *BFI Waste*, *supra*, agreed with the plaintiff's argument that a host community agreement between a private entity and the Franklin County Fiscal Court "created a franchise granted in violation of the competitive bidding requirements of Section 164 of the Kentucky Constitution," even though the host community agreement at issue contained a permitting

contingency similar to § 3.02(b) of the Host Community Agreement. *BFI Waste*, 134 S.W.3d at 627.

The text of KRS 278.020(5) – which expressly mandates that "[n]o utility shall apply for or obtain any franchise, license, or permit from any city or other governmental agency ***until*** it has obtained … a certificate of convenience and necessity" (emphasis added) – provides further compelling evidence that Kentucky law permits a valid and irrevocable franchise to ***precede*** any necessary state permitting or regulatory approvals, as one might reasonably infer that this default rule was why the Kentucky Legislature perceived that legislation was necessary to implement a contrary policy in the specific case of utilities.

In general, "[a] franchise … granted by a municipality is granted subject to the right of the state to exercise its police power," and applicable "statutes are a part of [a] franchise … by operation of law." *City of Florence v. Owen Elec. Co-op., Inc.*, 832 S.W.2d 876, 881–82 (Ky. 1992) (further stating that "[t]he granting of a franchise on proper terms and the award of it to the highest and best bidder is held not to prevent the Public Service Commission from regulating rates and services" as authorized by statute). Accordingly, a local government's grant of a solid waste franchise necessarily occurs against the backdrop of permitting requirements and other regulatory aspects of Kentucky's solid waste management framework, and the fact that USA still had yet to comply with those permitting requirements did not prevent the Pike County Fiscal Court from awarding a valid, irrevocable solid waste franchise to USA on October 21, 2025.

In fact, Pike County itself is subject to the permitting requirements set forth in KRS 109.041(1) (which states that "[i]n addition to all other powers enumerated in Chapter 67 and other sections of the Kentucky Revised Statutes, counties, acting by and through their fiscal courts, ***may own and hold the permit*** for … solid waste management facilities" (emphasis added)), and the

Solid Waste Franchise simply empowered Plaintiffs to step into the shoes of the Pike County Defendants and become the lawful holder of that permit.

**5. Plaintiffs are entitled to the Pike County Fiscal Court's performance of its duties under the Host Community Agreement; such that the Pike County Fiscal Court's refusal to perform those duties violated Plaintiffs' procedural and substantive due process rights under the Fourteenth Amendment to the United States Constitution**

The binding duties and obligations that the Pike County Fiscal Court assumed through the Host Community Agreement were – and are – not discretionary, notwithstanding the general rule set forth in *Louisville v. Fiscal Court of Jefferson Cty.*, 623 S.W.2d 219, 224 (Ky. 1981) that

> "Where the contract involved relates to governmental or legislative functions of the council, or involves a matter of discretion to be exercised by the council, ***unless the statute conferring power to contract clearly authorizes the council to make a contract extending beyond its own terms***, no power of the council so to do exists, the council presently holding such powers is vested with no discretion to circumscribe or limit or diminish their efficiency, but must transmit them unimpaired to their successors. . . ."

*Id.*, quoting 56 Am. Jur.2d *Municipal Corporations*, § 154, at 206 (emphasis added).

As § 164 of the Kentucky Constitution confers unto Kentucky counties the power to make a contract for ***20 years***, § 164 "clearly authoriz[ed]" the Pike County Fiscal Court "to make a contract extending beyond its own terms" with respect to the Solid Waste Franchise. Accordingly, even though the Pike County Fiscal Court exercised "its governmental, rather than proprietary function" (*Arnett*, 934 S.W.2d at 273) in creating and granting the Solid Waste Franchise and entering into the Host Community Agreement to implement the same, that fact makes no difference under the circumstances herein.

Accordingly, Plaintiffs have "'a legitimate claim of entitlement'" to the Pike County Fiscal Court's performance of its duties as set forth in the Host Community Agreement which "'stem[s] from an independent source such as state law'"; in this particular case, § 164 of the Kentucky Constitution. *Rubicon Real Est. Holdings, LLC v. City of Pontiac*, 179 F.4th 431, 444 (6th Cir.

2026), quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). By refusing Plaintiffs a pre-deprivation hearing before the Pike County Fiscal Court (which could have provided Plaintiffs with the opportunity to dispel myths and calm public fears about the New Landfill before the Pike County Fiscal Court took action and irreparably breached the trust between the parties), the Pike County Defendants plausibly violated Plaintiffs' constitutional right to procedural due process.

Unlike the claim at issue in *Ramsey v. Board of Educ. of Whitley Cnty., Ky.*, 844 F.2d 1268 (6th Cir. 1988), Plaintiffs' constitutional claims herein do not involve a "finite interest [that] can be compensated adequately by an ordinary breach of contract action" based on the Pike County Defendants' breach of the Host Community Agreement. *Ramsey*, 844 F.2d at 1274. As set forth herein, the Pike County Fiscal Court's repudiation and breach of the Host Community Agreement and its consequent failure to perform its duties thereunder rendered the Solid Waste Franchise – Plaintiffs' vested property right by reason of § 164 of the Kentucky Constitution – entirely worthless. However, because of the timing of the Pike County Defendants' breach, the primary measure of damages provided in § 6.04 of the Host Community Agreement has not yet become available. Accordingly, any damages Plaintiffs might be able to recover in a breach of contract action under Kentucky law would be disproportionately low, as compared to the value of the Solid Waste Franchise, and such an action would provide a wholly inadequate remedy under the circumstances herein. *See Kaminski v. Coulter*, 865 F.3d 339, 348 (6th Cir. 2017) and Complaint at ¶¶ 52 and 67.

Moreover, the Pike County Defendants' utter disregard for the vested property rights which Plaintiffs obtained pursuant to § 164 of the Kentucky Constitution in the form of the Solid Waste Franchise plausibly violated Plaintiffs' substantive due process rights, which "are subject to limitations regardless of the adequacy of the procedures employed." *Taylor Acquisitions, L.L.C.*

*v. City of Taylor*, 313 F. App'x 826, 833 (6th Cir. 2009). Although the Sixth Circuit Court of Appeals held in *Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990) that "[t]he substantive Due Process Clause is not concerned with the garden variety issues of common law contract," the United States Supreme Court held in *City of Owensboro*, *supra* that a local government's attempted revocation of the plaintiff's franchise "was an impairment of the ***company's contractual property rights*** in the streets, and, as such, ***in contravention of the contract and due-process clauses of the Constitution of the United States***." *City of Owensboro*, 230 U.S. at 61 (emphases added).

**6. Plaintiffs have a cognizable property interest in the Solid Waste Franchise that provides a plausible claim based on the Pike County Defendants' taking thereof without just compensation**

The Pike County Defendants' Motion to Dismiss incorrectly asserts that Plaintiffs' "takings claim rests on the same alleged property interest" as Plaintiffs' procedural due process and substantive due process claims herein (*See* Pike County Defendants' Motion to Dismiss at p. 6), as Plaintiffs' due process claims are based upon Plaintiffs' legitimate claim of entitlement to the Pike County Fiscal Court's performance of its duties under the Host Community Agreement, while Plaintiffs' takings claim is based upon the "'bundle of rights'" Plaintiffs received as part of the Pike County Fiscal Court's award of the Solid Waste Franchise on October 21, 2025. *Andrews v. City of Mentor*, 11 F.4th 462, 470 (6th Cir. 2021). "[T]he property rights protected by takings law are broader (or at least not coextensive with) the property rights protected by due process." *Id.* at 469.

Because a franchise "is a vested right" which "[t]he state … may retake … ***as it may take other private property***, for public uses, ***upon the payment of just compensation***" (*Monongahela Nav. Co.*, 148 U.S. at 341 (emphases added)) and the Pike County Fiscal Court's rescission of the Host Community Agreement "denied [Plaintiffs] all economically beneficial or productive use of" the Solid Waste Franchise (*Lucas*, 505 U.S. at 1015; *See also* Complaint at ¶ 38), the Complaint

states a plausible claim pursuant to 42 U.S.C. § 1983, which is based upon the Pike County Defendants' taking of Plaintiffs' property without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Pursuant to the rule announced in *Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180, 206 (2019), Plaintiffs may bring such a claim in this Court without first pursuing a claim for inverse condemnation in a Kentucky court.

### C. Plaintiffs' request for declaratory judgment as set forth in Count IV of the Complaint is based upon the Pike County Defendants' unconstitutional impairment of Plaintiffs' franchise contract and has no connection with Plaintiffs' property–based claims.

While the Pike County Defendants' Motion to Dismiss asserts that "Count IV [of the Complaint] should also be dismissed to the extent it seeks federal declaratory or injunctive relief based on the same alleged vested entitlement" set forth in Count I and Count III of the Complaint (*See* Pike County Defendants' Motion to Dismiss at p. 6), that passing reference offers no serious analysis of Plaintiffs' claims as set forth in Count IV of the Complaint, which are based squarely upon (i) the status and character of the Solid Waste Franchise as "a contract between the [grantor government body] and the [grantee person or entity] binding upon each and cannot be impaired either by legislation or the court" (*Union Light, Heat & Power Co. v. City of Fort Thomas*, 285 S.W. 228, 231 (Ky. 1926), citing the text of Article 1, § 10 of the United States Constitution), and (ii) the Pike County Defendants' violations of Article 1, § 10 of the United States Constitution and § 19 of the Kentucky Constitution in attempting to revoke the Solid Waste Franchise. *Davis I*, 230 S.W.2d at 910.

Because the Pike County Defendants' Motion to Dismiss does not offer a relevant argument regarding why the Court should dismiss Count IV of the Complaint, the Pike County Defendants' argument that the Court should decline supplemental jurisdiction over Plaintiffs'

Kentucky law claims is moot, because at least one federal law claim set forth in the Complaint will remain, regardless of the Court's disposition of Count I and Count III of the Complaint.

## V. CONCLUSION

For the reasons set forth herein, the Pike County Defendants' Motion to Dismiss must be denied.

Respectfully submitted,

*/s/ Scott A. Schuette*

David J. Guarnieri (KBA #86522)
Mitchel T. Denham (KBA #89815)
Scott A. Schuette (KBA #98591)
McBRAYER, PLLC
201 E. Main Street, Suite 900
Lexington, Kentucky 40507
Telephone: (859) 231-8780
dguarnieri@mcbrayerfirm.com
mdenham@mcbrayerfirm.com
sschuette@mcbrayerfirm.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of November 2026, a true and correct copy of the foregoing was served electronically with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Jonathan C. Shaw, Esq.
Porter, Banks, Baldwin & Shaw, PLLC
327 Main Street, PO Drawer 1767
Paintsville, Kentucky 41240-1767
jshaw@psbb-law.com
aturner@psbb-law.com

*/s/ Scott A. Schuette*
Scott A. Schuette
*Counsel for Plaintiffs*